# EXHIBIT A

Summons and Complaint
filed in the Fifth Judicial
District Court,
Case No. CV20-0238

# EXHIBIT A

ISSUED

SUMM
CRAIG A. MUELLER, ESQ.
Nevada Bar No. 4703.
**MUELLER & ASSOCIATES, INC.**
723 S. 7th Street
Las Vegas, NV 89101
Telephone: (702) 382-1200
Facsimile: (702) 637-4817
Email: electronicservice@craigmuellerlaw.com
*Attorney for Plaintiffs*

**DISTRICT COURT**

**NYE COUNTY, NEVADA**

DENYCE ELDRIDGE, an individual; AQUA A SALON; a domestic Entity;

Plaintiffs,

vs.

STEVE SISOLAK, in his official capacity of Governor of the State of Nevada; and DOES I through X; and ROE CORPORATIONS I through X, inclusive

Defendants.

Case No.: CV20-0238

Dept No.: 2

**SUMMONS-CIVIL**

**GOVERNOR STEVE SISOLAK**

**NOTICE! YOU HAVE BEEN SUED. THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS.**

**READ THE INFORMATION BELOW.**

**TO THE DEFENDANT(S):** A Complaint has been filed by the Plaintiff against you for the relief set forth in the Complaint.

1.      If you intend to defend this lawsuit, within 20 days after this Summons is served on you, exclusive of the day of service, you must do the following:

(a) File with the Clerk of this Court, whose address is shown below, a formal written response to the Complaint in accordance with the rules of the Court, with the appropriate filing fee.

Page 1 of 2

MUELLER & ASSOCIATES, INC.
723 S. 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile: (702) 637-4817

(b) Serve a copy of your response upon the attorney whose name and address is shown below.

2.      Unless you respond, your default will be entered upon application of the Defendants/Counterclaimants and failure to so respond will result in a judgment of default against you for the relief demanded in the Counterclaim, which could result in the taking of money or property or other relief requested in the Counterclaim.

3.      If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response may be filed on time.

4.      The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission members and legislators each have 45 days after service of this Summons within which to file an Answer or other responsive pleading.

Submitted by:

MUELLER & ASSOCIATES, INC.

_____
CRAIG A. MUELLER, ESQ.
Nevada Bar No. 4703
723 S. 7ᵗʰ Street
Las Vegas, NV 89101
*Attorney of Plaintiffs*

CLERK OF COURT

Sarah Westfall      05/05/2020
DEPUTY CLERK
Nye County Courthouse
1520 E. Basin Ave.
Pahrump, NV 89060

MUELLER & ASSOCIATES, INC.
723 S. 7ᵗʰ Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile: (702) 637-4817

Page 2 of 2

1   **COMP**
    CRAIG A. MUELLER, ESQ.
2   Nevada Bar No. 4703
    **MUELLER & ASSOCIATES, INC.**
3   723 S. 7th Street
    Las Vegas, NV 89101
4   Telephone: (702) 382-1200
    Facsimile: (702) 637-4817
5   Email: electronicservice@craigmuellerlaw.com
    *Attorney for Plaintiffs*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FILED**
FIFTH JUDICIAL DISTRICT

MAY – 5 2020

**Nye County Clerk**
_____ **Deputy**

**DISTRICT COURT**

**NYE COUNTY, NEVADA**

DENYCE ELDRIDGE, an individual; AQUA
A SALON; a domestic Entity;

    Plaintiffs,

vs.

STEVE SISOLAK, in his official capacity of
Governor of the State of Nevada; and DOES I
through X; and ROE CORPORATIONS I
through X, inclusive

    Defendants.

Case No.: CV20-0238

Dept No.: 2

**COMPLAINT FOR DECLARATORY
RELIEF AND INJUNCTIVE RELIEF**

**DEMAND FOR JURY**

NOW COME Plaintiffs, DENYCE ELDRIDGE and AQUA A SALON, by and through

their attorney of record, CRAIG A. MUELLER, ESQ., of the law firm of **MUELLER &**

**ASSOCIATES, INC.** who hereby bring this action for Declaratory and Injunctive Relief, and

monetary damages, against Defendant, STEVE SISOLAK, in his official capacity as Governor of

State of Nevada.

**INTRODUCTION**

1.     Plaintiff DENYCE ELDRIDGE, an individual; a resident of the County of Nye,

State of Nevada, and   Aqua Salon a Domestic Entity; doing business in the County of Nye, State

of Nevada, are affected by Governor Sisolak's actions, and their fundamental right to associate

with customers, business associates, co-workers, friends and family and utilize their privately

MUELLER & ASSOCIATES, INC.
723 S. 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile: (702) 637-4817

1    owned property have been unjustifiably infringed by Governor Sisolak's emergency

2    directives/orders (identified further below).

3      2.      An individual's choice to maintain human relationships, whether with friends,

4  

5    family, business associates, customers and co-workers and the right to associate with such

6    individuals under the First Amendment must be secured against undue intrusion by the State

7    because safeguarding this kind of individual freedom is central to our constitutional scheme.

8    *Roberts v. United States Jaycees*, 468 U.S. 609 (1984).

9      3.      The Fifth Amendment's guarantee that private property shall not be taken for a

10    public use without just compensation was designed to bar Government from forcing some

11    individuals to bear public burdens which, in all fairness and justice, should be borne by the public

12    as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

13                          **PARTIES**

14

15      4.      Plaintiff DENYCE ELDRIDGE an individual is a resident of the County of Nye,

16    State of Nevada, and the owner/operator of Plaintiff, AQUA A SALON, a beauty salon;

17      5.      Plaintiff AQUA A SALON, is a beauty salon, and a Domestic Entity, authorized to

18    do business and doing business at 1520 East Highway 372 Suite # B, Pahrump, Nevada, 89048,

19    County of Nye, State of Nevada;

20

21      6.      As a direct and proximate result of the Emergency Orders/Directives of Governor

22    Sisolak, Plaintiff AQUA A SALON has been closed for business since March 13, 2020.

23      7.      Prior to the shutdown, Plaintiff AQUA A SALON was receiving gross receipts of

24    approximately $40,000.00 (Forty Thousand Dollars) per month; Plaintiff AQUA A SALON

25    employs Plaintiff DENYCE ELDRIGE as well as three cosmetologists who are independent

26    contractors. Neither Plaintiff DENYCE ELDRIGE nor the three cosmetologists qualify for

27    unemployment benefits or the payroll loan program implemented by the Federal Government.

28

MUELLER & ASSOCIATES, INC.
723 S. 7ᵗʰ Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile: (702) 637-4817

8.      Defendant, Governor STEVE SISOLAK, named in his official capacity, is the Governor of the State of Nevada is responsible for enforcing the laws of the State of Nevada, and is charged with implementing policy through executive orders; including the Executive Orders as outline below.

9.      The true names of DOES, 1 through X, their citizenship and capacities, whether individual, corporate, associate, partnership or otherwise, are unknown to Plaintiffs        who therefore alleges that each of the Defendants, designated as DOES I through X, are, or may be legally responsible for the   events referred to in this action   and   caused damages         to Plaintiffs, as herein alleged and Plaintiffs will ask leave of this Court to amend the       Complaint to insert the true names and capacities of such Defendant, when the same have been ascertained and to join them in this action, civil damages.

10.     The true names of ROES, 1 through X, their citizenship and capacities, whether individual, corporate, associate, partnership or otherwise, are unknown to Plaintiffs        who therefore alleges that each of the Defendants, designated as ROES I through X, are, or may be legally responsible for the   events referred to in this action   and   caused damages         to Plaintiffs, as herein alleged and Plaintiffs will ask leave of this Court to amend the       Complaint to insert the true names and capacities of such Defendant, when the same have been ascertained and to join them in this action, civil damages.

11.     At all times herein mentioned, Defendants, their agents, partners servants, employees, contractors and each of them were acting within the course and scope of their agency, employment, or contract.

12.     **NRS 414.0345   defines "Emergency" as follows:**

"Emergency means an occurrence or threatened occurrence for which, in the determination of the Governor, the assistance of state agencies is needed to supplement the efforts and capabilities

MUELLER & ASSOCIATES, INC.
723 S. 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile: (702) 657-4817

of political subdivisions to save lives, protect property and protect the health and safety of persons in this state, or to avert the threat of damage to property or injury to or the death of persons in this state."

13.     As of May 5, 2020, there have been no known Covid19 deaths in Nye County, Nevada.

14.     As of May 5, 2020, there have been no shortage of hospital beds, medical personnel, personal protection equipment, ventilators, respirators, or Covid19 test kits in Nye County, Nevada requiring the assistance of state agencies.

15.     As of May 5, 2020, there has been no occurrence in Nye County, Nevada for which "the assistance of state agencies is needed to supplement the efforts and capabilities of political subdivisions to save lives, protect property and protect the health and safety of persons in this state, or to avert the threat of damage to property or injury to or the death of persons in this state."

16.     According to Governor Sisolak and Nevada's Health Response Center, nonessential services include:

- Entertainment & hospitality, including but not limited to strip clubs and brothels, casinos, concert venues, arenas, auditoriums, stadiums, large conference rooms, meeting halls, and cafeterias
- Recreation and athletic facilities, including but not limited to community and recreation centers, gyms, health clubs, fitness centers, yoga, barre and spin facilities
- **Beauty and personal care services and facilities, including but not limited to barber shops, beauty, tanning, waxing hair salons, and nail salons and spas**
- Retail facilities, including shopping malls except for pharmacy or other health care facilities within retail operations. Retailers are encouraged to continue online operations with pickup and delivery.

17.     Article I Section 18 of the Constitution of the State of Nevada provides:

Sec: 18.   **Unreasonable seizure and search; issuance of warrants.**  The right of the *people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches shall not be violated; and no warrant shall issue but on probable cause, supported by Oath or Affirmation, particularly describing the place or places to be searched, and the person or persons, and thing or things to be seized.*

MUELLER & ASSOCIATES, INC.
723 S. 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile: (702) 637-4817

18.     Article I Section 20 of the Constitution of the State of Nevada provides:

Sec: 20.    **Rights retained by people.**    This enumeration of rights shall not be construed to impair or deny others retained by the people.

19.     Article I Section 22 of the Constitution of the State of Nevada provides in pertinent part as follows:

Sec: 22.    **Eminent    domain    proceedings:    Restrictions    and    requirements.** Notwithstanding any other provision of this Constitution to the contrary:

1.    Public use shall not include the direct or indirect transfer of any interest in property taken in an eminent domain proceeding from one private party to another private party. In all eminent domain actions, the government shall have the burden to prove public use.

2.    In all eminent domain actions, prior to the government's occupancy, a property owner shall be given copies of all appraisals by the government and shall be entitled, at the property owner's election, to a separate and distinct determination by a district court jury, as to whether the taking is actually for a public use.

3.    If a public use is determined, the taken or damaged property shall be valued at its highest and best use without considering any future dedication requirements imposed by the government. If private property is taken for any proprietary governmental purpose, then the property shall be valued at the use to which the government intends to put the property, if such use results in a higher value for the land taken.

4.    In all eminent domain actions, just compensation shall be defined as that sum of money, necessary to place the property owner back in the same position, monetarily, without any governmental offsets, as if the property had never been taken. Just compensation shall include, but is not limited to, compounded interest and all reasonable costs and expenses actually incurred.

5.    In all eminent domain actions where fair market value is applied, it shall be defined as the highest price the property would bring on the open market.

6.    Property taken in eminent domain shall automatically revert back to the original property owner upon repayment of the original purchase price, if the property is not used within five years for the original purpose stated by the government. The five years shall begin running from the date of the entry of the final order of condemnation.

7.    A property owner shall not be liable to the government for attorney fees or costs in any eminent domain action.

8.    For all provisions contained in this section, government shall be defined as the State of Nevada, its political subdivisions, agencies, any public or private agent acting on their behalf, and any public or private entity that has the power of eminent domain.

20.    The exercise of eminent domain is not limited to real property, and can include personal property, even intangible property such as contract rights, patents, trade secrets, and copyrights.

MUELLER & ASSOCIATES, INC.
723 S. 7ᵗʰ Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile: (702) 637-4817

21.     According to Governor Sisolak and Nevada's Health Response Center, nonessential services include:

- Entertainment & hospitality, including but not limited to strip clubs and brothels, casinos, concert venues, arenas, auditoriums, stadiums, large conference rooms, meeting halls, and cafeterias
- Recreation and athletic facilities, including but not limited to community and recreation centers, gyms, health clubs, fitness centers, yoga, barre and spin facilities
- Beauty and personal care services and facilities, including but not limited to barber shops, beauty, tanning, waxing hair salons, and nail salons and spas
- Retail facilities, including shopping malls except for pharmacy or other health care facilities within retail operations. Retailers are encouraged to continue online operations with pickup and delivery.

## JURISDICTION AND VENUE

22.     This Court has jurisdiction to hear this case because Plaintiff DENYCE ALDRIDGE is a resident of the County of Nye, State of Nevada, and Plaintiff AQUA A SALON is authorized to do business and has been doing business in the County of Nye, State of Nevada, for the past three years.

## FACTS

23.     The World Health Organization ("WHO") and the Center for Disease Control and Prevention ("CDC") identified the novel coronavirus ("COVID-10") as a "public health emergency of international concern."

24.     Likewise, the U.S. Department of Health and Human Services ("HHS") declared that COVID-19 has created a public health emergency.

25.     On April 4, President Donald J. Trump approved the request declaring a major disaster in the State of Nevada and ordered Federal assistance to supplement State, local, and tribal recovery 1 ordered Federal assistance to supplement State, local, and tribal recovery efforts in the areas affected by COVID-19. For the first time in our Nation's history, every State and territory has a presidential disaster declaration at the same time.

MUELLER & ASSOCIATES, INC.
723 S. 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile: (702) 637-4817

Page 6 of 30

MUELLER & ASSOCIATES, INC.
723 S. 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile: (702) 637-4817

26. On March 12,2020 there was a Declaration of Emergency by Governor Sisolak initiated a coordinated state response effort. These efforts combined a series of directives enforcing social distancing with organizational changes streamlining Nevada's efforts to protect the health and safety of Nevada.

27. On March 14, 2020 Governor Sisolak established the Medical Advisory Team (MAT) to advise him with expert medical recommendations on policy issues related to Nevada's response.

28. On March 15 ,202 Governor Sisolak announced the closure of K-12 schools across Nevada while maintaining the meal service for students who rely on free and reduced food and meal programs (Declaration of Emergency 001).

29. On March 15, 2020 Governor Sisolak issued an emergency regulation to expand the authorization of paid administrative leave for state employees in a state of emergency.

30. On March 15, 2020 Governor Sisolak directed the executive branch agency leadership to close state offices to the public – as soon as possible – and transition as much of the work as possible to online and over-the-phone services.

31. On March 16, 2020 the Nevada Department of Agriculture (NDA) announced the implementation of the first of a two-tier strategy to address students' need for the National School Lunch Program School Breakfast Program by using drive-thru services where possible.

32. On March 17, 2020 Governor Sisolak announced the Stay Home for Nevada risk mitigation initiatives. March 18- Governor Sisolak signed Emergency Directive 002, which provided for the closure of casinos and gaming establishments within Nevada.

33. On March 18, 2020 Governor Sisolak waived the unemployment insurance work search requirement and the unemployment insurance 7-day wait period.

34.     On March 20, 2020 Governor Sisolak announced a Stay at Home directive for Nevadans and closure of non-essential business to protect Nevadans and encourage them to stay home and help flatten the curve (Emergency Directive 003). NEVADA UNITED Roadmap to Recovery NEVADA UNITED: Roadmap to Recovery- federally supported, state managed, locally executed.

35.     March 20, 2020 Governor Sisolak and the Nevada Department of Motor Vehicles issued an automatic 90-day extension for expiring driver's licenses, vehicle registrations, and other DMV documents (Emergency Directive 004) March 20- Governor Sisolak issued a directive extending school closures and providing for distance learning (Emergency Directive 005).

36.     On March 22, 2020 Governor Sisolak established the COVID-19 Response, Relief, and Recovery Private Sector Task Force in order to facilitate a public/private partnership.

37.     On March 22, 2020 Governor Sisolak signed Emergency Directive 006, which waived the public meeting location requirement for public meetings in Nevada.

38.     On March 24, 2020 Governor Sisolak signed Emergency Directive 007, which limited gatherings to fewer than 10 people and closed state recreation areas.

39.     March 29, 2020 Governor Sisolak signed an emergency directive placing a moratorium on evictions in the State of Nevada (Emergency Directive 008).

40.     March 31, 2020 Governor Sisolak issued a travel advisory for the State of Nevada, urging visitors or returning Nevadans to self-quarantine and monitor their health for 14 days after arriving or returning to Nevada.

41.     April 1, 2020 Governor Sisolak extended the closure of non-essential businesses, gaming properties, and schools (Emergency Directive 010).

42.     On April 1, 2020   Governor Sisolak signed the Battle Born Medical Corps emergency directive that waived certain licensing requirements to allow Nevada to quickly bring

MUELLER & ASSOCIATES, INC.
723 S. 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile: (702) 637-4817

MUELLER & ASSOCIATES, INC.
723 S. 7ᵗʰ Street, Las Vegas, Nevada 89101 -
Telephone: (702) 382-1200 Facsimile: (702) 657-4817

1  additional health care workers into our hospitals, and allow certain doctors, nurses, EMTs, and

2  even medical students to go to work right away (Emergency Directive 011).

3       43.    On April 1, 2020 Governor Sisolak signed Emergency Directive 12, which

4  activated the Nevada National Guard in support of Nevada's response to the pandemic.

5

6       44.    On April 2, 2020 Governor Sisolak issued revised Emergency Directive 009, which

7  extended deadlines related to legal proceedings, permits, and licenses.

8       45.    On April 3, 2020 Governor Sisolak and the Medical Advisory Team issued

9  statewide guidance on Improvised Face Coverings for the public.

10      46.    On April 8, 2020 Governor Sisolak announced Emergency Directive 013, which

11 expanded earlier social distancing emergency directives by closing retail showrooms and

12 prohibiting certain leisure activities.

13      47.    On April 10, 2020 The State activated the Nevada Disaster Recovery Framework.

14      48.    On April 14, 2020 Governor Sisolak signed Emergency Directive 014, which

15

16 extended the school closure through April 30 and addressed graduation requirements and distance

17 learning opportunities for Nevada students during the declared emergency.

18      49.    April 21, 2020 Governor Sisolak announced the criteria and framework for

19 Nevada's state-specific reopening plan.

20

21      50.    On April 27, 202 Governor Sisolak announced that Nevada would be joining the

22 Western States Pact. NEVADA UNITED Roadmap to Recovery NEVADA UNITED: Roadmap

23 to Recovery – federally supported, state managed, locally executed.

24      51.    On April 29, 2020 Governor Sisolak signed Directive 015, confirming his previous

25 announcement that school building closures and emergency programs of distance education would

26 continue through the end of the 2019-2020 academic year.

27

28

52.    On April 29, 2020 Governor Sisolak issued Directive 016, extending earlier the Stay at Home measure.

53.    The above executive orders/directives were issued to the Plaintiffs, and to all citizens of the State of Nevada, under threat of fines and criminal penalties and the above executive orders/directives substantially denied the Plaintiffs their use of their Tangible Property and its Physical Locations.

54.    By denying Plaintiffs access to their Physical Locations, they are unable to generate any additional sales or other forms of revenue, to collect the bulk of their outstanding receivables or pay many of their payables.

55.    In fact, there was no "Emergency" as defined in **NRS  414.0345** which would warrant the imposition of Governor Sisolak's Emergency Directives/Orders 0001 through 016.

56.    As a result, the working capital of the Plaintiffs was severely constrained, and they were forced to immediately reduce their expenses in order to survive until the above executive orders/directives were lifted.

57.    Plaintiff AQUA A SALON was forced to "lay off" three (3) cosmetologists who operated as independent contractors and who are therefore not eligible for unemployment benefits. The layoffs irreparably damaged Plaintiffs' sterling reputation with its workforce.

58.    With her forced closures, Governor Sisolak caused considerable damage to Plaintiffs' reputations, and to their relationships with their customers, vendors and employees.

59.    Neither Governor Sisolak nor the State of Nevada have offered appropriate compensation to. in exchange for the total regulatory seizure of property.

60.    During the pendency of the aforesaid emergency orders/directives, Plaintiffs have no use of their Tangible Property and their Physical Locations, the value of. Which substantially diminished.

MUELLER & ASSOCIATES, INC.
723 S. 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile: (702) 637-4817

61.     The aforesaid emergency orders/directives make it commercially impracticable for Plaintiffs to use the property belonging to. for any economically beneficial purpose and inflict very nearly the same effect for constitutional purposes as appropriating or destroying [the property as a whole]. *Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 455, (2009).

62.     Governor Sisolak's emergency orders/directives render Plaintiff's property and business, unusable, including both the real property in which the business is physically located ("Physical Location") and the tangible property housed in such locations – such as equipment, machinery, inventory, tools, business records, and other forms of tangible equipment used in operating each business ("Tangible Property") (both forms of property collectively referred to as "Property").

63.     Despite issuing the aforesaid emergency orders/directives, Governor Sisolak did not provide compensation for those who suffered substantial – and perhaps total – diminution of value in their property interests as a result. Defendants and each of them, deprived. Plaintiffs of all economically beneficial use of their Property.

64.     The aforesaid emergency orders/directives constitute a regulatory taking implemented for a recognized public purpose, and therefore the failure to pay just compensation contravenes the Takings Clause of the Fifth and Fourteenth Amendments. *Coalition for Gov't Procurement v. Fed. Prison Indus.*, 365 F.3d 435, 478, (2004) see also *Horne v. Dep't of Agric.*, 576 U.S. 350, 135 S. Ct. 2419, 2426 (2015) ("Nothing in the text or history of the Takings Clause, or our precedents, suggests that the rule is any different when it comes to appropriation of personal property. The Government has a categorical duty to pay just compensation when it takes your car, just as when it takes your home.").

...

MUELLER & ASSOCIATES, INC.
723 S. 7ᵗʰ Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile: (702) 697-4817

**INDIVIDUAL RESTRICTIONS UNDER THE EMERGENCY DIRECTIVE/ORDER OF**

**GOVERNOR SISOLAK**

65.     Under the aforesaid emergency orders/directives, individuals are restricted from leaving their residences for any reason not expressly authorized under the orders.

66.     On April 1, 2020 Governor Sisolak extended the closure of non-essential businesses, including beautify salons, gaming properties, and schools (Emergency Directive 010).

67.     April 8, 2020, Governor Sisolak announced Emergency Directive 013, which expanded earlier social distancing emergency directives by closing retail showrooms and prohibiting certain leisure activities.

68.     Under the Emergency directives/orders issued by Governor Sisolak, the Plaintiffs have been prevented from exercising some of the most fundamental rights enjoyed by citizens of the United States and the State of Nevada.

69.     The Plaintiffs are under a stay-at-home order until further order of Governor Sisolak. The order includes non-essential businesses. When he issued the order, Governor Sisolak told reporters he wasn't "Playing around."

70.     "There should be no confusion. And there's not in my mind. This is not the time to try to find loopholes," Governor Sisolak said. "If your business is not essential to providing sustenance and for the everyday safety, health and wellbeing of Nevadans, you must shut down so that we can give health care workers and our fellow citizens the best chance at fighting this virus that we can."

71.     Part of that emergency order/directive gave local governments the ability to enforce the closures in the best way they see fit, including criminal penalties if necessary.

MUELLER & ASSOCIATES, INC.
723 S. 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile: (702) 637-4817

72.    Thereafter,  Nye County Nevada officials issued a <u>press release</u> saying that they fully intended to comply with the shutdown order.

"The governor has made it clear that you have a duty imposed by law under his emergency declaration," the press release stated. "Nye County Deputies will be taking enforcement action in accordance with his emergency declaration made on March 20th. This enforcement action is ongoing until further notice."

73.    Under threat of fines and criminal penalties the Plaintiffs are prohibited from operating a business; earning a living; or utilizing their privately owned property, for the duration of the **Executive Order of Governor Sisolak.**

74.    Governor Sisolak claimed his authority to enact the aforesaid Emergency Directives Orders by citing a set of broad emergency statutes which he said authorized his actions to stem the spread of COVID-19 across the State of Nevada Michigan.

75.    Governor Sisolak's Emergency Directives/Orders halted all economic activity and violates fundamental rights protected by the Constitution of the United States and the Constitution of the State of Nevada.

76.    As a direct and proximate result of the conduct of the Defendant, Governor Steve Sisolak, Plaintiff incurred damages in excess of $15,000.00. In this regard, Plaintiff prays leave of the Court to insert all said damages herein when the same have been fully ascertained or proven at the time of trial herein.

77.    . It has been necessary for Plaintiffs to retain the services of the law firm of **MUELLER & ASSOCIATES, INC.** to represent them in the above-titled matter and Plaintiffs are entitled to reasonable attorney's fees and costs incurred herein.

MUELLER & ASSOCIATES, INC.
723 S. 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile: (702) 637-4817

## COUNT I

### VIOLATION OF THE TAKINGS CLAUSE- 42 U.S.C. §1983

### EMERGENCY DIRECTIVES/ORDERS 0001 THROUGH ARE AN UNCONSTITUTIONAL REGULATORY TAKING OF PROPERTY WITHOUT JUST COMPENSATION IN VIOLATION OF THE FIFTH AMENDMENT'S TAKINGS CLAUSE AS INCORPORATED UNDER THE FOURTEENTH AMENDMENT

78.    Plaintiffs hereby incorporate by reference the preceding paragraphs as though fully set forth herein. Governor Sisolak has seized without compensation the property of businesses and individuals across the State, by forcing the closures of business under Emergency Directive/Orders 0001 through 016.

79.    These uncompensated seizures violate the Takings Clause of the Fifth Amendment, made applicable to States through the Fourteenth Amendment, and also violate well-established notions of Substantive and Procedural Due Process. Plaintiffs respectfully request that this Court (i) declare the Governor Sisolak's actions unconstitutional, and (ii) order the payment of just compensation.

80.    Governor Sisolak issued a series of Emergency Directives/Orders for the public purpose of protecting Nevada's public health, safety and welfare.

81.    Governor Sisolak has placed the cost of these Orders, issued for the benefit of the public, squarely upon the shoulders of private individuals and has failed to justly compensate affected parties for these takings undertaken for their benefit to the public.

82.    Without extending constitutionally required just compensation to Plaintiffs, these Emergency Directives/Orders jeopardize the sustainability of Plaintiffs' business and the rights of the Plaintiffs' rights with respect to property ownership.

MUELLER & ASSOCIATES, INC.
723 S. 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile: (702) 637-4817

MUELLER & ASSOCIATES, INC.
723 S. 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile: (702) 637-4817

83.     The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. Const. Amend. V.

84.     The Takings Clause "is designed not to limit the governmental interference with property rights *per se,* but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." *Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528, 536–37 (2005) (quoting *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,* 482 U.S. 304, 315 (1987) (emphasis in original)).

85.     The Takings Clause bars government actors "from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States,* 364 U.S. 40, 49 (1960).

86.     Governor Sisolak issued Emergency Directives/Orders 001 through 016 as a means of slowing the spread of the novel coronavirus.

87.     Governor Sisolak acted under color of state law, and Emergency Directives/Orders 001 through 016 were issued to serve a well-recognized public purpose by a duly elected state official and his designee.

88.     Emergency Directives/Orders 001 through 016 Plaintiffs' use of their Tangible Property and Physical Location to such an extent that, at least temporarily, the Orders entirely diminished the economically beneficial use of those Properties.

89.     Under Emergency Directives/Orders 001 through 016  *all* economically beneficial and profitable uses of Plaintiffs' Tangible Property and Physical Location were extinguished.

90.     Emergency Directives/Orders 001 through 016 require Plaintiffs' Physical Location and business, to remain idle.

91.    The Supreme Court "recognized that government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster- and that such 'regulatory takings' may be compensable under the Fifth Amendment." *Lingle*, 544 U.S. at 537.

92.    "The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415–16 (1922).

93.    Governor Sisolak's executive Emergency Directives/Orders "go too far" and must "be recognized as a taking." *See id.*

94.    Otherwise, *without just compensation guaranteed by the Takings Clause,* Plaintiffs will be privately saddled with the cost of paying for government action undertaken for the common good.

95.    Plaintiffs have suffered a complete loss of "*all* economically beneficial uses" of their Property while Emergency Directives/Orders 001 through 016 remain in effect. This complete loss constitutes a categorical taking, whether it be Plaintiffs' inability to operate their businesses at their Physical Location or their inability to exercise any of their other property rights with regard to their Tangible Property. *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992).

96.    Plaintiffs have been called upon to sacrifice all usage of their Property in the name of the common good, that is, to leave their properties economically and otherwise idle, and for this, they have suffered a taking. *Lucas*, 505 U.S. at 1019.

97.    In the alternative, under the framework articulated by the Supreme Court in *Penn Central*, Emergency Directives/Orders 001 through 016 constitute a taking based upon "the

MUELLER & ASSOCIATES, INC.
723 S. 7ᵗʰ Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile: (702) 637-4817

1 magnitude of [the Orders'] economic impact and the degree to which [the Orders] interfere[]

2 with legitimate property interests." *Lingle*, 544 U.S. 528 at 540.

3      98.      The Supreme Court's analysis in *Penn Central* sets forth the framework for

4 assessing whether government action is considered a regulatory taking, identifying "several

5 factors that have particular significance." *Penn Central Transp. Co. v. New York City*, 438 U.S.

6 104, 124 (1978).

7

8      99.      The court looks to three factors when analyzing a taking: (1) "[t]he economic

9 impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered

10 with distinct investment-backed expectations," and (3) "the character of the governmental action,"

11 *Penn Cent.*, 438 U.S. at 124, 98 S.Ct. 2646. While these factors provide "important guideposts,"

12 "[t]he Takings Clause requires careful examination and weighing of all the relevant

13 circumstances." *Palazzolo*, 533 U.S. at 634, 636, 121 S.Ct. 2448 (O'Connor, J., concurring); *see*

14 *also Tahoe–Sierra*, 535 U.S. at 321, 122 S.Ct. 1465 (whether a taking has occurred "depends

15 upon the particular circumstances of the case"); *Yee v. City of Escondido*, 503 U.S. 519, 523, 112

16 S.Ct. 1522, 118 L.Ed.2d 153 (1992) (regulatory takings claims "entail[ ] complex factual

17 assessments"). *Lost Tree Vill. Corp. v. United States*, 115 Fed. Cl. 219, 228 (2014) (emphasis

18 added).

19

20      100.    Even if the regulation falls short of eliminating all economically beneficial use, a

21 taking nonetheless may have occurred, *Palazzolo v. Rhode Island*, 533 U.S. 606 at 617, (2001).

22

23      101.    Since the onset of Governor Sisolak's Emergency directives and Orders, Plaintiffs

24 have not been permitted to use their Physical Location to operate their business, nor have they

25 been allowed to use their Tangible Property for any economically profitable use.

26      102.    Emergency Directives/Orders 001 through 016, have either entirely drained

27 Plaintiffs' Property of all economic value during their pendency, or have nearly done so; in either

28

MUELLER & ASSOCIATES, INC.
723 S. 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile: (702) 637-4817

1    event, the diminution of value and government interference caused by these Emergency

2    Directives/Orders is an unconstitutional taking without just compensation.

3        103.   As a direct and proximate result of the conduct of the Defendant, Governor Steve Sisolak,

4    Plaintiffs incurred damages in excess of $15,000.00. In this regard, Plaintiffs pray leave of the Court

5    to insert all said damages herein when the same have been fully ascertained or proven at the time

6
7    of trial herein.

8        104.   It has been necessary for Plaintiffs to retain the services of the law firm of

9    **MUELLER & ASSOCIATES, INC.** to represent them in the above-titled matter and Plaintiffs

10   are entitled to reasonable attorney's fees and costs incurred herein.

11                              <u>**COUNT II**</u>

12                 <u>**SUBSTANTIVE DUE PROCESS—42 U.S.C. §1983**</u>

13

14               <u>**INTERFERENCE WITH PROPERTY INTERESTS**</u>

15   <u>**EMERGENCY DIRECTIVES/ORDERS 001 THROUGH 016, DEPRIVE PLAINTIFFS**</u>

16   <u>**OF LIFE, LIBERTY AND/OR PROPERTY WITHOUT DUE PROCESS OF LAW IN**</u>

17   <u>**VIOLATION OF THE FOURTEENTH AMENDMENT**</u>

18       105.   Plaintiffs hereby incorporate by reference the preceding paragraphs as though

19   fully set forth herein.

20       106.   Never in the modern history of the United States—even in war time—has such an

21
22   invasive action striping citizen of fundamental rights been taken by a government order.

23       107.   The Plaintiffs have a protected liberty interest in their right to live without

24   arbitrary governmental interference in their fundamental property right to use and enjoy land in

25   which they hold a recognized interest. *See MFS, Inc. v. DiLazaro*, 771 F. Supp. 2d 382, 440–41

26   (E.D. Pa. 2011) (*citing DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell*, 53 F.3d

27   592, 600 (3d Cir.1995)); *see also Horne*, 576 U.S. 350, 135 S. Ct. at 2426.

28

MUELLER & ASSOCIATES, INC.
723 S. 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile: (702) 637-4817

108.    The Supreme Court "ha[s] emphasized time and again that "[t]he touchstone of due process is protection of the individual against arbitrary action of government[.]" *City. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)).

109.    "[T]he fault [may] lie[] in a denial of fundamental procedural fairness ... or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective[.]" *Id.* at 845-846 (citations omitted).

110.    "'[S]ubstantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' ... or interferes with rights 'implicit in the concept of ordered liberty[.]'" *United States v. Salerno*, 481 U.S. 739, 746 (1987) (quoting *Rochin v.California*, 342 U.S. 165, 172 (1952), and *Palko v. Connecticut*, 302 U.S. 319, 325–326 (1937)).

111.    "[T]he substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Lewis*, 523 U.S. at 847 (quotations omitted).

112.    Emergency Directives/Orders as set forth above, constitute arbitrary, capricious, irrational and abusive conduct which unlawfully interferes with Plaintiffs' liberty and property interests protected by the due process clause of the Fourteenth Amendment to the United States Constitution.

113.    Defendant has acted under color of state law with the intent to unlawfully deprive the Plaintiffs of their liberty and property without substantive due process in violation of the Fourteenth Amendment to the United States Constitution.

114.    Defendant's actions, including issuance and enforcement of Emergency Directives/Orders 001 through 016, constitute the official policy, custom, and practices of the

MUELLER & ASSOCIATES, INC.
723 S. 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile (702) 637-4817

1   State of Nevada, Emergency Directives/Orders 001 through016, intrude upon the Plaintiffs' use

2   and enjoyment of their property and separately impacts upon the use of its Tangible Property. *See*

3   *DeBlasio*, 53 F.3d at 601. Therefore, Governor Sisolak has violated Plaintiffs' substantive due

4   process rights. *See also Nashville, C. & St. L. Ry. v. Walters*, 294 U.S. 405, 415 (1935).

5   115.     Governor Sisolak has arbitrarily, irrationally and capriciously imposed upon

6

7   Plaintiffs' use and enjoyment of their property by, *inter alia*, requiring both Plaintiffs to

8   shutdown indefinitely and to privately bear the burden for such publicly beneficial decisions,

9   which are aimed at slowing the spread of the novel coronavirus. *See DeBlasio*, 53 F.3d at 601.

10   116.     Governor Sisolak implemented Emergency Directives/Orders 001 through 016 for

11   the purpose of preserving public health, safety and welfare. The implementation of these

12   Directives/Orders, however, caused Plaintiffs, harm which they are being asked to privately bear

13

14   for a manifest public benefit.

15   117.     The Governor Sisolak's behavior does not comport with traditional ideas of fair

16   play and decency, *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957), and shocks the conscience' and

17   violates the 'decencies of civilized conduct.'" *See Lewis*, 523 U.S. 833, 846–47 (citations

18   omitted); and violates Plaintiffs' Substantive Due Process Rights.

19   118.     Governor Sisolak h a s  acted intentionally, willfully, wantonly, and with

20   callous and reckless disregard for Plaintiffs' constitutional rights.

21

22   119.     As a direct and proximate result of Governor Sisolak's Emergency Orders,

23   Plaintiffs have and will continue to sustain monetary damages including loss in the value of the

24   Tangible Property and Physical Location, lost revenues, profits, expenses, attorneys' fees, and

25   other costs incurred.

26   120.     As a direct and proximate result of the conduct of the Defendant, Governor Steve Sisolak,

27   Plaintiffs incurred damages in excess of $15,000.00. In this regard, Plaintiffs pray leave of the Court

28

MUELLER & ASSOCIATES, INC.
723 S. 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile: (702) 637-4817

1   to insert all said damages herein when the same have been fully ascertained or proven at the time

2   of trial herein.

3       121.    It has been necessary for Plaintiffs to retain the services of the law firm of

4   MUELLER & ASSOCIATES, INC. to represent them in the above-titled matter and Plaintiffs

5   are entitled to reasonable attorney's fees and costs incurred herein.

6

7                                   COUNT III

8                   SUBSTANTIVE DUE PROCESS- 42 U.S.C. §1983

9                   INTERFERENCE WITH RIGHT TO ASSOCIATE

10   EMERGENCY DIRECTIVES/ORDER 001 THROUGH 016 DEPRIVE PLAINTIFFS OF

11      LIFE, LIBERTY AND/OR PROPERTY WITHOUT DUE PROCESS OF LAW IN

12                   VIOLATION OF THE FOURTEENTH AMENDMENT

13      122.    Plaintiffs hereby incorporate by reference the preceding paragraphs as though

14   fully set forth herein.

15      123.    The Plaintiffs have a right to be free from intrusion into the fundamental freedom

16   of their right to associate. *Roberts v. United States Jaycees*, 468 U.S. 609 (1984).

17      124.    Moreover, the constitutional shelter afforded such relationships reflects the

18

19   realization that individuals draw much of their emotional enrichment from close ties with others.

20   Protecting these relationships from unwarranted state interference therefore safeguards the

21   ability independently to define one's identity that is central to any concept of liberty. *Id.* at 619.

22      125.    The Plaintiffs have a protected liberty interest in their right to associate with their

23   business associates, customers, and co-workers without arbitrary governmental interference. *Loving*

24   *v. Virginia*, 388 U.S. 1 (1967).

25

26      126.    The Supreme Court has emphasized time and again that the touchstone of due

27   process is protection of the individual against arbitrary action of government. *City of*

28

MUELLER & ASSOCIATES, INC.
723 S. 7th Street, Las Vegas, Nevada 89101
Telephone (702) 382-1200 Facsimile (702) 657-4817

1  *Sacramento v. Lewis,* 523 U.S. 833, 845 (1998) (quoting *Wolff v. McDonnell,* 418 U.S. 539, 558

2  (1974)).

3      127.    The fault may lie in a denial of fundamental procedural fairness … or in the

4  exercise of power without any reasonable justification in the service of a legitimate

5  governmental objective. *Id.* at 845-846 (citations omitted).

6

7      128.    Choices to enter into and maintain certain intimate human relationships must be

8  secured against undue intrusion by the State because of the role of such relationships in

9  safeguarding the individual freedom that is central to our constitutional scheme. In this respect,

10  freedom of association receives protection as a fundamental element of personal liberty. *Roberts*

11  *v. United States Jaycees,* 468 U.S. 609, 617-618 (1984).

12      129.    The test for a substantive-due-process right is twofold: whether the right is

13  "objectively, deeply rooted in this Nation's history and tradition" and whether "the crucial

14  guideposts" of "[o]ur Nation's history, legal traditions, and practices" support the right.

15

16      130.    Defendant has acted under color of state law with the intent to unlawfully deprive

17  the Plaintiffs of their liberty and property without substantive due process in violation of the

18  Fourteenth Amendment to the United States Constitution.

19      131.    Defendant's actions, including issuance and enforcement of Emergency

20  Directives/Orders 0001 through 016 constitute the official policy, custom, and practices of the

21  State of Nevada. Therefore, Governor Sisolak has violated the Plaintiffs' substantive due process

22  rights.

23

24      132.    Governor Sisolak has acted intentionally, willfully, wantonly, and with

25  callous and reckless disregard for Plaintiffs' constitutional rights.

26

27

28

MUELLER & ASSOCIATES, INC.
723 S. 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile: (702) 637-4817

133.    As a direct and proximate result of Governor Sisolak's Emergency Orders, the Plaintiffs have and will continue to sustain damages including attorneys' fees, and other costs incurred.

134.    As a direct and proximate result of the conduct of the Defendant, Governor Steve Sisolak, Plaintiff incurred damages in excess of $15,000.00. In this regard, Plaintiff prays leave of the Court to insert all said damages herein when the same have been fully ascertained or proven at the time of trial herein.

135.    As a direct and proximate result of the callous, reckless, oppressive, willful and outrageous conduct of the Defendant, Governor Steve Sisolak, Plaintiffs are entitled to punitive damages in excess of $15,000.00. In this regard, Plaintiffs pray leave of the Court to insert all said damages herein when the same have been fully ascertained or proven at the time of trial herein.

136.    It has been necessary for Plaintiffs to retain the services of the law firm of **MUELLER & ASSOCIATES, INC.** to represent them in the above-titled matter and Plaintiffs are entitled to reasonable attorney's fees and costs incurred herein. reasonable attorney's fees and costs incurred herein.

## COUNT IV

### INTERFERENCE WITH PROPERTY INTERESTS IN VIOLATION OF ARTICLE I OF THE CONSTITUTION OF THE STATE OF NEVADA

137.    Plaintiffs hereby incorporate by reference the preceding paragraphs as though fully set forth herein.

138.    The Plaintiffs have a protected liberty interest in their right to live without arbitrary governmental interference in their fundamental property right to use and enjoy land in which they hold a recognized interest. *See MFS, Inc. v. DiLazaro,* 771 F. Supp. 2d 382, 440–41

MUELLER & ASSOCIATES, INC.
723 S. 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile: (702) 637-4817

MUELLER & ASSOCIATES, INC.
723 S. 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile: (702) 637-4817

1  (E.D. Pa. 2011) (*citing DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell,* 53 F.3d

2  592, 600 (3d Cir.1995)); *see also Horne,* 576 U.S. 350, 135 S. Ct. at 2426.

3      139.    The Supreme Court "ha[s] emphasized time and again that "[t]he touchstone of

4  due process is protection of the individual against arbitrary action of government[.]" *City. of*

5  *Sacramento v. Lewis,* 523 U.S. 833, 845 (1998) (quoting *Wolff v. McDonnell,* 418 U.S. 539, 558

6  (1974)).

7

8      140.    "[T]he fault [may] lie[] in a denial of fundamental procedural fairness … or in the

9  exercise of power without any reasonable justification in the service of a legitimate governmental

10  objective[.]" *Id.* at 845-846

11      141.    **NRS 414:0345    defines "Emergency" as follows:**

12      "Emergency means an occurrence or threatened occurrence for which, in the determination

13  of the Governor, the assistance of state agencies is needed to supplement the efforts and capabilities

14  of political subdivisions to save lives, protect property and protect the health and safety of persons

15

16  in this state, or to avert the threat of damage to property or injury to or the death of persons in this

17  state."

18      142.    As of May 5, 2020, there have been no known Covid19 deaths in Nye County,

19  Nevada.

20

21      143.    As of May 5, 2020, there have been no shortage of hospital beds, medical personnel

22  personal protection equipment, ventilators, respirators, or Covid19 test kits in Nye County, Nevada

23  requiring the assistance of state agencies.

24      144.    As of May 5, 2020, there has been no occurrence in Nye County, Nevada for which

25  "the assistance of state agencies is needed to supplement the efforts and capabilities of political

26  subdivisions to save lives, protect property and protect the health and safety of persons in this state,

27  or to avert the threat of damage to property or injury to or the death of persons in this state."

28

145.   According to Governor Sisolak and Nevada's Health Response Center, nonessential services include:

- Entertainment & hospitality, including but not limited to strip clubs and brothels, casinos, concert venues, arenas, auditoriums, stadiums, large conference rooms, meeting halls, and cafeterias
- Recreation and athletic facilities, including but not limited to community and recreation centers, gyms, health clubs, fitness centers, yoga, barre and spin facilities
- **Beauty and personal care services and facilities, including but not limited to barber shops, beauty, tanning, waxing hair salons, and nail salons and spas**
- Retail facilities, including shopping malls except for pharmacy or other health care facilities within retail operations. Retailers are encouraged to continue online operations with pickup and delivery.

146.   Article I Section 18 of the Constitution of the State of Nevada provides:

Sec: 18.   **Unreasonable seizure and search; issuance of warrants.**   The right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches shall not be violated; and no warrant shall issue but on probable cause, supported by Oath or Affirmation, particularly describing the place or places to be searched, and the person or persons, and thing or things to be seized.

147.   Article I Section 20 of the Constitution of the State of Nevada provides:

Sec: 20.   **Rights retained by people.**   This enumeration of rights shall not be construed to impair or deny others retained by the people.

148.   Article I Section 22 of the Constitution of the State of Nevada provides in pertinent part as follows:

Sec: 22.   **Eminent   domain   proceedings:   Restrictions   and   requirements.** Notwithstanding any other provision of this Constitution to the contrary:

1.   Public use shall not include the direct or indirect transfer of any interest in property taken in an eminent domain proceeding from one private party to another private party. In all eminent domain actions, the government shall have the burden to prove public use.

2.   In all eminent domain actions, prior to the government's occupancy, a property owner shall be given copies of all appraisals by the government and shall be entitled, at the property owner's election, to a separate and distinct determination by a district court jury, as to whether the taking is actually for a public use.

3.   If a public use is determined, the taken or damaged property shall be valued at its highest and best use without considering any future dedication requirements imposed by the government. If private property is taken for any proprietary governmental purpose, then the property shall be

MUELLER & ASSOCIATES, INC.
723 S. 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile: (702) 637-4817

valued at the use to which the government intends to put the property, if such use results in a higher value for the land taken.

4. In all eminent domain actions, just compensation shall be defined as that sum of money, necessary to place the property owner back in the same position, monetarily, without any governmental offsets, as if the property had never been taken. Just compensation shall include, but is not limited to, compounded interest and all reasonable costs and expenses actually incurred.

5. In all eminent domain actions where fair market value is applied, it shall be defined as the highest price the property would bring on the open market.

6. Property taken in eminent domain shall automatically revert back to the original property owner upon repayment of the original purchase price, if the property is not used within five years for the original purpose stated by the government. The five years shall begin running from the date of the entry of the final order of condemnation.

7. A property owner shall not be liable to the government for attorney fees or costs in any eminent domain action.

8. For all provisions contained in this section, government shall be defined as the State of Nevada, its political subdivisions, agencies, any public or private agent acting on their behalf, and any public or private entity that has the power of eminent domain.

149. The exercise of eminent domain is not limited to real property, and can include personal property, even intangible property such as contract rights, patents, trade secrets, and copyrights.

150. In fact, there was no "Emergency" as defined in NRS 414.0345 which would warrant the imposition of Emergency Directives/Orders 0001 through 016.

151. "'[S]ubstantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' ... or interferes with rights 'implicit in the concept of ordered liberty[.]'" *United States v. Salerno*, 481 U.S. 739, 746 (1987) (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952), and *Palko v. Connecticut*, 302 U.S. 319, 325–326 (1937)).

152. "[T]he substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Lewis*, 523 U.S. at 847 (quotations omitted).

153. Emergency Directives/Orders as set forth above, constitute arbitrary, capricious, irrational and abusive conduct which unlawfully interferes with Plaintiffs' liberty and property

MUELLER & ASSOCIATES, INC.
723 S. 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile: (702) 637-4817

1    interests protected by the due process clause of the Fourteenth Amendment to the United States

2    Constitution. The Defendants have failed to provide Plaintiffs with any compensation for the

3    taking of their property, let alone just compensation.

4           154.    Defendant has acted under color of state law with the intent to unlawfully deprive

5    the Plaintiffs of their liberty and property without substantive due process in violation of the

6
7    Fourteenth Amendment to the United States Constitution.

8           155.    Defendant's actions, including issuance and enforcement of Emergency

9    Directives/Orders 001 through 016, constitute the official policy, custom, and practices of the

10   State of Nevada, Emergency Directives/Orders 001 through016, intrude upon the Plaintiffs' use

11   and enjoyment of their property and separately impacts upon the use of its Tangible Property.

12          156.    Governor Sisolak has arbitrarily, irrationally and capriciously imposed upon

13   Plaintiffs' use and enjoyment of their property by, *inter alia*, requiring both Plaintiffs to

14   shutdown indefinitely and to privately bear the burden for such publicly beneficial decisions,

15
16   which are aimed at slowing the spread of the novel coronavirus.

17          157.    Governor Sisolak implemented Emergency Directives/Orders 001 through 016 for

18   the purpose of preserving public health, safety and welfare. The implementation of these

19   Directives/Orders, however, caused Plaintiffs, harm which they are being asked to privately bear

20   for a manifest public benefit.

21
22          158.    The Governor Sisolak's behavior does not comport with traditional ideas of fair

23   play and decency, *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957), and shocks the conscience' and

24   violates the 'decencies of civilized conduct.'" *See Lewis*, 523 U.S. 833, 846–47 (citations

25   omitted); and violates Plaintiffs' Substantive Due Process Rights.

26          159.    As a direct and proximate result of Governor Sisolak's Emergency Orders,

27   Plaintiffs have and will continue to sustain monetary damages including loss in the value of the

28

MUELLER & ASSOCIATES, INC.
723 S. 7ᵗʰ Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile: (702) 637-4817

1  Tangible Property and Physical Location, lost revenues, profits, expenses, attorneys' fees, and

2  other costs incurred.

3      160.    As a direct and proximate result of the conduct of the Defendant, Governor Steve Sisolak,

4  Plaintiffs incurred damages in excess of $15,000.00. In this regard, Plaintiffs pray leave of the Court

5  to insert all said damages herein when the same have been fully ascertained or proven at the time

6

7  of trial herein.

8      161.    Governor Sisolak has acted intentionally, willfully, wantonly, and with callous

9  and reckless disregard for Plaintiffs' constitutional rights. As such, Plaintiffs are entitled to

10  exemplary damages, in excess of $15,000.00.

11      162.    It has been necessary for Plaintiffs to retain the services of the law firm of

12  **MUELLER & ASSOCIATES, INC.** to represent them in the above-titled matter and Plaintiffs

13  are entitled to reasonable attorney's fees and costs incurred herein.

14

15                          **REQUEST FOR RELIEF**

16      WHEREFORE, Plaintiffs demand judgment in their favor, against Defendant and seek

17  relief for:

18      a.      Issuing a Temporary Restraining Order Enjoining Defendant from enforcing

19  Emergency Directives/Orders 0001 through 016, as a violation of Plaintiffs' fundamental rights

20  under the First, Fifth and Fourteenth Amendments;

21

22      b.      A declaratory judgment that issuance and enforcement of Emergency

23  Directives/Orders 0001 through 016 as an unconstitutional violation of Plaintiffs' substantive

24  due process rights under the First and Fourteenth Amendment;

25      c.      A declaratory judgment that issuance and enforcement of Emergency

26  Directives/Orders 0001 through 016   as an unconstitutional taking without just compensation,

27  under the Fifth and Fourteenth Amendment;

28

Page 28 of 30

MUELLER & ASSOCIATES, INC.
723 S. 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile: (702) 637-4817

d.     A declaratory judgment that issuance and enforcement of Emergency

Directives/Orders 0001 through 016 as an unconstitutional violation of Plaintiffs' substantive

due process rights under the First and Fourteenth Amendment;

e.     A permanent injunction to prohibit Defendants from enforcing the Emergency

Directives/Orders 0001 through 016.

f.     General damages in excess of $15,000.00;

g.     Special damages in excess of $15,000.00;

h.     Exemplary damages in excess of $15,000.00;

i.     Interest from the time of service of this Complaint as allowed by NRS17.130;

j.     Costs of suit and attorneys' fees; and .

k.     For such other and further relief as the Court may deem appropriate.

DATED this ____ day of May, 2020.

                                              MUELLER & ASSOCIATES, INC.


                                              CRAIG A. MUELLER, ESQ.,
                                              Nevada Bar No. 4703
                                              723 South Seventh Street
                                              Las Vegas, Nevada 89101
                                              *Attorney for Plaintiffs*

MUELLER & ASSOCIATES, INC.
723 S. 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile: (702) 657-4817

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MUELLER & ASSOCIATES, INC.
723 S. 7ᵗʰ Street, Las Vegas, Nevada 89101
Telephone: (702) 382-1200 Facsimile: (702) 657-4817

**JURY DEMAND**

Plaintiffs demand a jury trial on all counts contained in the Complaint.

DATED this _____ day of May, 2020.

MUELLER & ASSOCIATES, INC.

CRAIG A. MUELLER, ESQ.,
Nevada Bar No. 4703
723 South Seventh Street
Las Vegas, Nevada 89101 ,
*Attorney for Plaintiffs*